**Madelyn DAMRON, Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,
Defendant-Appellee.**

No. 85–3108.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 31, 1985.

Decided Dec. 5, 1985.

Marya C. Kolman, argued, Jacqueline S. Bollas, Columbus, Ohio, for plaintiff-appellant.

Nicholas J. Pantel, argued, Asst. U.S. Atty., Cincinnati, Ohio, Sheila P. Cooley, Asst. Atty. Gen., Columbus, Ohio, for defendant-appellee.

Before KEITH and CORNELIA G. KENNEDY, Circuit Judges; and EDWARDS, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Plaintiff Madelyn Damron appeals the District Court's grant of summary judgment in favor of the Secretary. Damron filed an application for Supplemental Security Income (SSI) on July 6, 1982, which was denied both initially and on reconsideration. An Administrative Law Judge (ALJ) heard the case on April 7, 1983, and denied benefits as well. The Appeals Council affirmed the ALJ's decision. The issue in this case is whether the District Court erred in holding that the final decision of the Secretary was supported by substantial evidence on the record.

The facts reveal that Damron is at this time a fifty-five year-old woman with an eighth grade education who has never worked outside the home in her adult life. She apparently led a vigorous life until 1980, raising nine children and caring for her husband when he contracted Black Lung Disease. In 1980 she suffered a stroke. According to her complaints her health began deteriorating rapidly at that time.[1] She complains of high blood pressure, dizziness, numbness, left side weakness, nerves, shortness of breath,[2] and head, chest and back pain.

Evidence shows that physicians have variously diagnosed cerebrovascular disease, hypertension, arthritis, emphysema, chronic obstructive pulmonary disease, transient

1. Mrs. Damron's husband left her shortly after the stroke, although they are still married. Her youngest daughter, the only one remaining at home, takes care of her.

2. Damron testified that she smoked at one time but had quit completely at the time of the hearing. She noted an improvement in her breathing after she quit, but she still experiences the spells often and takes oxygen at home for them.

ischemic attacks, musculoskeletal dysfunction, vasospastic disease in lower extremities, advanced carotid occlusive disease, general arteriosclerosis advanced for her age, cerebrovascular arteriosclerosis, and vertigo secondary to her arteriosclerotic vascular disease. She takes ten different kinds of medication daily or as needed for these ailments.

Damron testified at the hearing that she is no longer able to do anything around the house except sit on the floor and dust low table tops after her daughter removes all objects from them. She can fix herself cereal for breakfast or a sandwich at lunch when her daughter is at school because everything Damron needs is left on the kitchen counter. Otherwise she relies on her daughter to bathe her (she burned herself because she could not tell how hot the water was), dress her on weekends when she gets dressed, help her upstairs (during the day when her daughter is gone she uses a pot downstairs because the only bathroom is upstairs), and generally run the household. Damron's daughter testified to the same effect at the hearing.

The ALJ officially found that Damron was born October 9, 1930 ("closely approaching advanced age"), completed the eighth grade of school ("limited education"), and has no relevant work experience. He found that her testimony as to her symptoms and complaints was not consistent with the medical evidence of record. He found that she has had the medically determinable impairments best diagnosed as cerebral vascular disease with history of prior reversible neurologic deficit; carotid vascular disease, vasospastic disease in the lower extremities; and chronic obstructive pulmonary disease. He further found that except for brief periods lasting less than twelve months, she has had the residual functional capacity (RFC) to perform at least light work on a sustained basis. Finally, he found that in accordance with 20 C.F.R. 416.969 and 20 C.F.R. 404 Appendix

2 of Subpart P, Rule 202.10 ("the grid"), she has not been "disabled" within the meaning of the Social Security Act at any time beginning on or before the date of the decision.[3]

The ALJ relied primarily on the report of Dr. Charles A. Derrow, who examined Damron at the request of the Secretary. Derrow indicated that there was no evidence of persistent neurologic deficit. He found no medical explanation for the chest pain or for the joint, neck, and back pain. The ALJ further relied on one page of a report filled out at the Secretary's request by Dr. Charles B. May, Damron's treating physician since 1976. In this report Dr. May opined that during an entire eight-hour work day Damron could sit for four or five hours, stand for two or three hours, and walk for one or two hours. He further opined that she could lift ten pounds frequently and up to twenty-five pounds occasionally, could use her hands for simple grasping, and could occasionally bend, squat, and reach.

Plaintiff's arguments are that (1) the ALJ was selective in his consideration of the evidence, (2) the ALJ failed to consider Damron's subjective complaints, (3) the ALJ failed to consider the combined effects of Damron's medically documented impairments, (4) the ALJ gave insufficient weight to the opinions of Damron's treating physician, and (5) the ALJ mechanically and improperly applied the grid. Because of the conflict between plaintiff's testimony and the report of her attending physician as to the limitations on her activities, substantial evidence supported the ALJ's refusal to accept plaintiff's testimony. However, we remand based on the final argument, and the failure to note the restrictions in the treating physician's reports.

Plaintiff argues that the ALJ mechanically and improperly applied the grid to reach the conclusion that Damron could engage in at least light work. We agree with plaintiff's contention. The ALJ com-

3. Although the ALJ did not specifically find that Damron had a "severe impairment," 20 C.F.R. 416.920(c), we must assume that he so found because he stated that she has "restrictive impairments" and went on to decide the case on the basis of her residual functional capacity.

pletely failed to consider the effect of non-exertional limitations upon Damron's ability to find work in the national economy. Dr. May totally restricted Damron from environments that would expose her to dust, gases, fumes, and marked changes in temperature and humidity. He further totally restricted her from activities involving unprotected heights and being around moving machinery. The record does not reflect that any contradictory evidence was submitted on this point. The grid is not fully applicable when the claimant suffers from a nonexertional impairment such as an environmental restriction. 20 C.F.R. 404 Appendix 2 of Subpart P, Rule 200.00(e) provides that where an individual has both strength limitations and nonexertional limitations the grid is a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." Given Dr. May's severe restrictions as to environment and working conditions, it was incumbent upon the ALJ to hear from a vocational specialist to determine whether or not jobs existed in the national economy that Damron could still perform, taking these restrictions into account. Soc.Sec. Rul. 83–14 (Jan.1983) states that a decision maker will often require the assistance of a vocational specialist in cases involving light exertion combined with a nonexertional impairment.

Although there is no published case law [4] in this Circuit confirming this Court's application of Rule 200.00(e), nine other circuits have applied the rule in similar cases. "Where the fifth step in the disability inquiry is reached and nonexertional limitations are present, recourse must be had to other evidence than the Tables of Appendix 2 alone to conclude whether the claimant is capable of performing ... work available in the national economy." *Roberts v. Schweiker*, 667 F.2d 1143, 1145 (4th Cir.

1981). *Accord Washington v. Heckler*, 756 F.2d 959 (3d Cir.1985); *Bellamy v. Secretary of Health and Human Services*, 755 F.2d 1380 (9th Cir.1985); *Sryock v. Heckler*, 764 F.2d 834 (11th Cir.1985); *Lopez v. Secretary of Health and Human Services*, 747 F.2d 37 (1st Cir.1984); *Smith v. Schweiker*, 735 F.2d 267 (7th Cir.1984); *Channel v. Heckler*, 747 F.2d 577 (10th Cir.1984); *Nicks v. Schweiker*, 696 F.2d 633 (8th Cir.1983); *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir.1983).

■ Although the ALJ found that Damron has "the residual functional capacity to perform *at least* light work on a sustained basis" (emphasis added), it is clear from the record that if she does not have the RFC to perform light work on a sustained basis, she must be found to be totally disabled. The grid would compel this finding under 20 C.F.R. 404 Appendix 2 of Subpart P, Rule 201.09, given her age, education, and lack of work experience. Furthermore, the ALJ was apparently relying on 20 C.F.R. 416.967(b), which states that "[i]f someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." Dr. May noted that Damron could do no fine manipulation and could sit for only two to three hours at a time. Therefore, the question of whether or not jobs exist in the national economy that allow for "light exertion" and Damron's nonexertional restrictions is crucial to the result in this case.

We hold that based on the record the ALJ erred in his application of the grid in this case. The judgment of the District Court is vacated and the case remanded with instructions to remand to the Secretary for further proceedings not inconsistent with this opinion. We note also that the ALJ considered sending plaintiff for examination by a psychologist or psychia-

---

**4.** The rule has been applied in unpublished cases. *See, e.g., Oliver v. Schweiker*, 709 F.2d 1506 (6th Cir.1983) Unempl.Ins.Rep. (CCH) ¶ 17930: "There is *no* evidence in the record which supports the ALJ's finding that the claim-

ant can, despite his nonexertional limitations, perform specific jobs in the light work category." At 4. The rule was also announced in dicta in *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 528 (6th Cir.1981).

trist. On remand the Secretary may wish to give further consideration to this issue in view of plaintiff's complaints and history.