833 F.2d 1013
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Eddie C. SULLIVAN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-5848.
 United States Court of Appeals, Sixth Circuit.
 Nov. 24, 1987.
 
 Before MILBURN and BOGGS, Circuit Judges, and JAMES HARVEY, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Appellant, Eddie C. Sullivan, filed applications for Social Security disability benefits and Supplemental Security Income benefits alleging disability because of an injury to his lower back. The application was denied at all administrative levels, and in the district court. We reverse and remand for further consideration.
 
 
 2
 * Sullivan was born on August 19, 1941. Since 1955, he has held a number of unskilled jobs involving heavy labor, some with the municipal Public Works Department, including garbage collector, animal warden, deckhand, and mechanic. He also stocked groceries. Sullivan has a sixth grade education. Sullivan alleges disability because of an injury to his lower back, which apparently occurred during his last day of work, October 26, 1981.
 
 
 3
 Sullivan has filed two applications for the same injury to the lower back, which injury predates both applications. He had two laminectomies in the lumbar region of the spine prior to the time that he alleged that he became disabled in the first application for social security income benefits, which was October 26, 1981. The first application was denied, and Sullivan did not file for a reopening. The administrative law judge thus considered the denial of the first application to be res judicata. This appeal concerns the second application, which was filed on July 13, 1983, in which Sullivan alleged that his disability began on February 12, 1983.
 
 
 4
 In July 1983, Sullivan was mowing the lawn and suffered severe pain in the lower back. He filed his disability application on July 13, 1983, and the claims representative, R. Pubble, found that Sullivan had "no observed physical impairment." The following day, Dr. Noonan, a neurosurgeon, examined him and found that he had pain upon straight leg raising and difficulty in walking on his toes and heels. Sullivan was given the prescription medicines Robaxin and Talwin for pain and told to report to Noonan in six weeks.
 
 
 5
 Sullivan had first seen Noonan for his back on October 28, 1981. Prior to the date that he alleged that he became disabled in his second application, on November 2, 1982, Sullivan was admitted to the hospital with complaints of low back pain under Noonan's orders. In November 1982, a computer-assisted tomography ("CAT") scan ordered by Noonan showed only operative changes to the lumbar spine and no definite evidence of a herniated disc. Other tests were normal. A second opinion was obtained from Dr. Ross, whose specialty is not revealed in the record. Ross found Sullivan's health to be good with no lung obstruction on a chest X-ray. Sullivan was discharged from the hospital on November 9, 1982. Sullivan visited Dr. Noonan again with complaints of low back pain on a continuing basis from November 30, 1982 through May 17, 1983, which was the last visit before the mowing incident. Sometimes Noonan prescribed medicine for pain and muscle relaxation; at other times not.
 
 
 6
 After the mowing incident, Noonan ordered a second CAT scan, which revealed evidence of a bulging disc between the L4 and L5 vertebrae that crowded the fecal sac and evidence of a possible herniated disc between the L5 vertebra and the sacrum. Dr. Noonan advised Sullivan to take it easy and avoid repeated bending, stooping and lifting. Noonan refused to prescribe surgery unless the condition worsened.
 
 
 7
 Before this latest evidence could be considered, the Social Security Administration denied benefits, based upon the prior reports and the reports of the previous hospital visit. Sullivan filed a notice of reconsideration dated August 9, 1983. Upon reconsideration of the prior evidence and the second CAT scan, the Social Security Administration again denied benefits on August 24, saying that X-rays do "show some disc herniation," but there was no neurological deficit and "[s]ince the claimant's impairment is less than severe he is not found disabled." In its decision, the Social Security Administration apparently did not consider the report of Dr. Borres, a pediatric cardiologist. Borres examined Sullivan for the Social Security Administration on August 22, 1983 and found that he was without neurosensory deficit and that his condition was less than severe.
 
 
 8
 In his updated application for disability benefits of September 1, 1983, Sullivan acknowledged constant use of prescription medicines for pain, including Tylenol and Percodan, which Noonan prescribed in September and August, respectively.
 
 
 9
 On September 15, 1983, Sullivan was admitted to the hospital for a myelogram. The results were normal. On December 17, 1983, Noonan completed a disability questionnaire for Sullivan. Noonan stated that Sullivan had pain upon repetitive motion and prolonged standing and sitting. Noonan thought that Sullivan was unable to engage in substantial gainful activity for six hours per day, five days per week.
 
 
 10
 A hearing was held on December 7, 1983. At the hearing, Sullivan testified to the constant use of prescription medicines for pain. Sullivan said that the back surgeries did not eliminate pain, that it was only temporarily alleviated by the second surgery and returned thereafter and radiated into his left leg. He was limited in his daily activities to taking care of personal needs, listening to the radio, and watching television. Sullivan drove every other day, but the farthest that he drove in the last six months was one mile. Sullivan said he could only sit for thirty to thirty-five minutes at a time and could only stand for five minutes continuously. The heaviest item that he could lift was a cup of coffee.
 
 
 11
 After the hearing, on December 16, 1983, Sullivan's attorney deposed Dr. John Grenfell, a specialist in rehabilitation counseling who had examined Sullivan in connection with his successful Workers' Compensation claim. Grenfell described an evaluation of Sullivan in his office on July 1, 1982. On the basis of his review of the medical reports, the evaluation and an IQ test administered to Sullivan, Grenfell found that Sullivan was capable of performing only unskilled work. Grenfell found Sullivan to be functionally illiterate with an IQ of only 74 on the Weschler Adult Intelligence Scale. He further stated that he thought Sullivan was unemployable because of low intelligence, limited work experience, and physical limitations.
 
 
 12
 Based upon the testimony at the hearing, the aforementioned medical reports, the medical reports of State Agency physicians who found that Sullivan's condition was non-severe in light of the lack of neurological and sensory-reflex deficits, and Grenfell's testimony, the administrative law judge issued his final decision denying benefits on March 12, 1984. The administrative law judge found that Sullivan is capable of engaging in light work, and employed the grid, 20 C.F.R. Pt. 404, Subpart P, App. 2, Rule 202.17 (1987) to determine that Sullivan was not disabled.
 
 II
 
 13
 In reviewing a determination of the administrative law judge for substantial evidence, the appeals court does not review the record de novo. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). Courts may not resolve conflicts in the evidence, or decide questions of credibility. Floyd v. Finch, 441 F.2d 73, 75 (6th Cir.1971). "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. Sec. 405(g) (1982 & Supp. III 1985).
 
 
 14
 The administrative law judge quite properly found that Sullivan has a severe impairment. Furthermore, he found that Sullivan cannot perform his past relevant work in the positions of stockboy, deckhand, mechanic, etc. These jobs are heavy or medium in nature. The ALJ determined, however, that the appellant has the residual functional capacity to do light work. We have found nothing in the medical reports as of the date of the request for reconsideration to rebut this finding as to his physical capacity. Sullivan may have had two prior laminectomies, but the most evidence that he could marshal on August 30, 1983 to show that he is disabled consists of a bulging intervertebral disc and a possibly herniated disc. There was no firm evidence of a herniated disc on his otherwise normal CAT scan. In this regard, the administrative law judge is not bound by the doctor's findings of disability, especially when other evidence calls into question its reliability. Harris v. Heckler, 756 F.2d 431, 437 (6th Cir.1985) (Wellford, J., dissenting).
 
 
 15
 The medical evidence is consistent with the finding that Sullivan has the capability to lift ten pounds frequently and twenty pounds occasionally, which the regulations define as "light work." 20 C.F.R. Sec. 404.1567(b) (1987). In finding that Sullivan has this residual functional capacity, the administrative law judge properly relied upon Noonan's report of the lack of a neurological deficit and the failure of either the myelogram or the second CAT scan to confirm a herniated intervertebral disc. The administrative law judge considered the medical evidence in evaluating Sullivan's complaints of pain and his wife's testimony as to pain, and found specifically that their testimony was not credible.
 
 
 16
 In order to justify a straightforward application of the grid, the elements in the case must fall into categories covered by the grid. In this case, since the plaintiff was under 45 at all relevant times, the grid will require a finding that he is not disabled if he is found to have the residual functional capacity to do either sedentary or light work, no matter what his state of education, and even if he is illiterate. See 20 C.F.R. Pt. 404, Subpart P, App. 2, Rules 201.23--.29; 202.16--.22 (1987). However, in determining Sullivan's residual abilities, mental impairments must also be considered. It is undisputed that plaintiff is borderline mentally retarded, with an IQ of only 74. The effect of this condition on plaintiff's ability to do light work, as the ALJ found, must also be considered. 20 C.F.R. Pt. 404, Subpart P, App. 2, Rule 201.00(h) (1987) provides guidance for exactly this situation, in the case of sedentary work. It discusses the case of a 41-year old (exactly our case) with an IQ of 78 (somewhat higher than our plaintiff), and notes that such a person may well not be able to do sedentary work, even though his physical conditions would otherwise make such a finding appropriate.
 
 
 17
 The grid rules contain no such explicit statement for light work. They do note, however, that the ability to do light work encompasses the ability to do sedentary work. 20 C.F.R. 404, Subpart P, App. 2, Rule 202.00. Thus, if sedentary work cannot be performed, there is some implication that light work cannot be done, either. In these circumstances, we believe there was not substantial evidence for the ALJ's finding that plaintiff could perform a wide range of light work, without specific consideration of his mental ability. In Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir.1978), and Kirk v. Secretary of Health & Human Services, 667 F.2d 524, 540-41 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983), we emphasized the need for individualized consideration when the grid did not apply exactly. In Kirk, we returned a case for further consideration, probably including a vocational expert's testimony, when a person's education and mental abilities did not fall clearly into either the category of illiterate, or of marginally educated. Here, plaintiff's mental status constitutes a significant non-exertional limitation precluding the simple use of the grid. An individualized judgment should be made as to the existence of specific jobs that plaintiff can perform, given his particular mental abilities. See Damron v. Secretary of Health & Human Services, 778 F.2d 279, 282 (6th Cir.1985). Plaintiff's history provides no support for his general ability to perform jobs requiring any degree of mental agility.
 
 
 18
 This case is remanded to the district court with instructions to remand to the Secretary for a non-guideline determination concerning Sullivan's ability to perform specific jobs.
 
 
 
 *
 The Honorable James Harvey, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation