875 F.2d 866
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Garland Lee PIPER, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-5823.
 United States Court of Appeals, Sixth Circuit.
 May 11, 1989.
 
 Before NATHANIEL R. JONES, WELLFORD and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Garland Lee Piper, forty-four, suffers from back and knee difficulties, as well as from high blood pressure problems. He is illiterate and has a low IQ. His claim for social security payments has been denied at all levels, both administrative and judicial.
 
 
 2
 Piper filed a claim for benefits in October 1983, alleging a period of disability commencing on April 7, 1982. The administrative law judge (ALJ) determined that Piper was entitled to a period of disability as a result of a back injury. It was further concluded, however, that the claimant's disability ceased in August 1983, when he returned to work, and that his entitlement to benefits accordingly ended in October 1983. After the claimant returned to work, he sustained a knee injury, not related to the back injury for which he was originally found to be disabled. There was no evidence precluding his return to work at his past job in the coal mines if he had not injured his knee. The claimant progressed satisfactorily after knee surgery in October 1983.
 
 
 3
 Piper then filed this current application for a period of disability and disability insurance benefits, alleging that he became disabled in April 1982 due to his knee injury.
 
 
 4
 Piper was born in 1945, and has a limited education. Testing indicates that he reads and writes on a low first grade level, and he is functionally illiterate. His work experience includes being a sawmill laborer and a scoop operator and shuttle car operator in the coal mines. He is currently receiving worker's compensation.[1]
 
 
 5
 At the hearing, claimant's attorney stated that claimant had not worked in 1984, and noted that the claimant was determined to have an 80% occupational disability for purposes of state workmen's compensation. He also claimed that the claimant had no transferable skills for sedentary work due to his physical and mental limitations.
 
 
 6
 Piper had back surgery in 1982 and knee surgery in 1983. He returned to work, but submitted to physical therapy on several occasions. Piper stated that he left his job in 1983 because he was laid off, but he was later called back. He also indicated that his doctor told him he could not return to work in the mines because he could only lift a maximum of fifty pounds, and could not lift that amount repeatedly. He testified that he currently cannot lift fifty pounds, and that bending and stooping cause him to have muscle spasms, and that movements of his hips are painful. Piper stated that he had these same problems in 1983, but they had worsened since then because he is basically inactive. He suffers low back pain and pain in his knee and has numbness in both of his hands and the lower parts of his legs. He further testified that he has headaches that may last for two or three days, and that he has bouts of depression. In addition, Piper suffers from high blood pressure.
 
 
 7
 Piper and his wife testified that he cannot do household chores and that she must help him dress and bathe. Piper does drive on occasion, but not for long distances. He maintains that he generally has to lie down, either on the floor or in the bed, for approximately three to six hours each day, and that he has trouble sleeping and gets no more than two or three hours rest per night.
 
 
 8
 Records from the Muhlenberg Community Hospital reveal that the claimant was also involved in a 1968 automobile accident and suffered a fracture of the proximal left patella. As a consequence, he had corrective surgery. A 1981 x-ray revealed some arthritic spurring of the knee joint laterally.
 
 
 9
 Dr. G.H. Rodman, a general practitioner and general surgeon, diagnosed the claimant in August 1981 as having pain and tenderness of the right knee, but no fractures and no likely disability. He permitted the claimant to return to work the following month. Dr. Rodman stated that he had not seen Piper since August 31, 1981.
 
 
 10
 In a report dated June 26, 1984, Dr. William E. Pearson, a neurological surgeon, stated that in August 1982 the claimant underwent surgery consisting of the removal of a ruptured disc at L-4 centrally and L-5 on the left side. Piper returned to work in early August and injured his knee in a work-related injury in a matter of weeks. Dr. Pearson indicated that the plaintiff suffered from an approximate 15% impairment to the body as a whole as a consequence, in part, due to arthritis of the lumbar spine and degenerative disc disease.
 
 
 11
 Dr. Pearson stated that he last saw the claimant on November 17, 1986. At the November examination, the claimant stood on his toes and heels well without difficulty. He had some tenderness over the sacroiliac joint on the right side, and straight leg raising caused pain mostly in the hip and knee area to approximately sixty degrees. Piper experienced minimal muscle spasms of the lumbar spine.
 
 
 12
 Dr. David W. Gaw, a board-certified orthopedic surgeon, in October of 1986, stated that x-rays of Piper's lower back revealed some mild degenerative changes, but otherwise were not remarkable. The diagnoses were degenerative lumbar disc disease and post-operative lumbar laminectomy. Dr. Gaw recommended that Piper work in a position where he would not have to do heavy lifting, continuous twisting or bending, or position himself awkwardly. Dr. Gaw thought Piper would be capable of performing lighter work, estimating only a 12% permanent physical impairment to his body as a whole, due primarily to his back injury.
 
 
 13
 In a report dated November 13, 1986, Dr. Robert L. Smith (Ph.D.), a clinical psychologist, stated that testing revealed that the claimant had a verbal IQ of 79, a performance IQ of 76, and a full-scale IQ of 77. He noted that for all practical purposes, Piper was totally illiterate. Dr. Smith found an absence of any psychopathology in these clinical evaluations, and the claimant's diagnosis was borderline intellectual functioning, along with his physical problems.[2] Dr. Smith stated that, based on the results of his evaluation, the claimant was primarily capable of performing unskilled physical labor, and that Piper would be capable of light labor of a sedentary nature. Because of claimant's intellectual and educational limitations, Piper, in his view, was precluded from employment. It should be noted that Dr. Smith is not trained as a vocational counselor.
 
 
 14
 Dr. M. Anwarul Quader reported in March 1987 that x-rays of Piper's lumbar spine showed evidence of moderate degenerative changes at the L4-5 and the L5-S1, with a laminectomy at both levels. Dr. Quader stated that he should not return to mining work, but might be employed outside the mines, preferably in a job that would not require frequent bending, stooping, or lifting more than thirty-five pounds on a repetitive basis. Dr. Quader noted that Piper uses no brace or walking aid, and that "[h]is condition is getting better." Piper did not complain of pain to Dr. Quader.
 
 
 15
 After weighing all of the medical evidence, the ALJ concluded that the claimant had severe residuals of lumbar laminectomy and multiple knee surgeries, degenerative lumbar disc disease, osteoarthritis of the knee, and borderline intellectual functioning. She stated that the claimant's subjective complaints of pain, however, were not fully supported by the objective medical evidence of record. Piper was held to be a younger individual because he was forty-two years of age at the time of the hearing. He was categorized as having a seventh grade, or a "limited or less," education as defined by 20 C.F.R. Sec. 404.1564. The ALJ concluded that the claimant "has had the residual capacity to perform sustained work activity of a light nature." She reached this decision by applying the grids, and therefore did not consider any vocational evidence.
 
 
 16
 The Appeals Council affirmed this decision, and Piper appealed to this court after he obtained no relief from the district court.[3]
 
 
 17
 Pursuant to 42 U.S.C. Sec. 405(g), judicial review of the Secretary's decision is limited to determining when substantial evidence exists in the record as a whole to support that decision. The reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). The Secretary is charged with finding the facts relevant to an application for disability benefits, and the Secretary's findings, if supported by substantial evidence, are conclusive." 42 U.S.C. Sec. 405(g).
 
 
 18
 Substantial evidence is "more than a mere scintilla. It means such relevant evidence as the reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938)). Substantiality of the evidence must be based on the record as a whole, and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 388.
 
 
 19
 In the instant case, the ALJ correctly determined that the claimant could not return to his past work as a sawmill or coal mine laborer. Once the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Secretary to establish that the claimant retains the residual functional capacity to perform "substantial gainful work which exists in the national economy." Frances v. Heckler, 749 F.2d 1562, 1566 (11th Cir.1985). Substantial evidence must support a finding that the claimant has the vocational qualifications to perform specific jobs. Richardson v. Secretary of Health and Human Services, 735 F.2d 962, 964 (6th Cir.1984). The Secretary may meet this burden by reference to the medical-vocational guidelines ("the grids"), unless the claimant suffers from nonexertional limitations that significantly limit the range of work permitted by his exertional limitations. Damron v. Secretary of Health and Human Services, 778 F.2d 279, 281-82 (6th Cir.1985). We have traditionally considered the term "nonexertional" to encompass mental, sensory, or environmental limitations. See Kimbrough v. Secretary of Health and Human Services, 801 F.2d 794, 795 (6th Cir.1986); see also Cole v. Secretary of Health and Human Services, 820 F.2d 768, 772 (6th Cir.1987).
 
 
 20
 In this case, claimant's IQ of 77 constitutes a significant nonexertional limitation precluding the use of the grids. Dr. Smith opined that claimant's intellectual limitations coupled with his "physical problems" essentially rendered claimant unemployable. In Kirk v. Secretary, 667 F.2d 524, 540 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983), we held that nonexertional limitations prevented application of the grids and required remand for vocational testimony to "illuminate which jobs, if any, appellant can handle with his disabilities and educational background." Likewise, we remand this case for similar vocational testimony.[4]
 
 
 21
 Accordingly, the judgment of the district court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 An administrative law judge determining whether Piper should be awarded worker's compensation determined that Piper was disabled. The definition of "disability," under Workmen's Compensation Laws, however, is different from the meaning of that same term under the Social Security regulations
 
 
 [2]
 Dr. Smith is not a medical doctor, and had no independent basis upon which to base his diagnosis concerning the claimant's "physical problems."
 
 
 [3]
 The magistrate, in a lengthy report to the district court, recommended judgment for the Secretary
 
 
 [4]
 This result is consistent with the disposition of several unreported cases with essentially the same facts. See Sullivan v. Secretary, H.H.S., No. 85-5848, slip op. (6th Cir. Nov. 24, 1987); Craft v. Secretary, H.H.S., No. 85-4042, slip op. (6th Cir. Jan. 22, 1987); Darnell v. Railroad Retirement Board, No. 83-3117 (6th Cir. Jan. 6, 1984); see also Clarke v. Bowen, 843 F.2d 271, 273 (8th Cir.1988) (noting vocational testimony required because low IQ prohibited application of grids); Salmi v. Secretary, H.H.S., 774 F.2d 685, 693 (6th Cir.1985) (failure to consider low IQ in determination of whether claimant suffered from severe impairment required remand for completion of sequential evaluation); Cunningham v. Heckler, 764 F.2d 911, 918 (D.C.Cir.1985) (instructing ALJ on remand to "take particular care to ensure that the vocational experts are aware in every step of their analysis that appellant's IQ indicates borderline mental skills")