**David S. BROWN, Plaintiff–Appellant,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.**

No. 99–2165.

United States Court of Appeals, Sixth Circuit.

Jan. 12, 2001.

Before KRUPANSKY, BATCHELDER, and MOORE, Circuit Judges.

## OPINION

KAREN NELSON MOORE, Circuit Judge.

Claimant–Appellant David S. Brown ("Brown") appeals to this court from the district court's decision affirming the Commissioner of Social Security's ("Commissioner") final determination to deny him disability insurance benefits under the Social Security Act. Upon review of the record, we find that there is substantial evidence to support the district court's decision and we therefore AFFIRM the denial of benefits.

## I. Background

Brown was born on April 6, 1973. He completed eleventh grade and obtained his high school diploma through a General Equivalency Degree program. His employment history includes work as a bagger at a grocery store and a food preparer at a fast food restaurant. He most recently worked in a factory from January 1994 to February 1996 as a high pressure spray washer cleaning automotive and industrial machinery. In July 1994, Brown suffered a workplace injury to his right foot when his foot got caught in a piece of machinery and remained in a twisted position for thirty minutes. Several months after the injury, Brown resumed work at the factory in a sedentary position cleaning excess plastic off steering wheels. He was unable to work for more than four hours a day due to the pain in his foot and he was subsequently terminated. Brown saw several doctors, beginning in September 1994, who diagnosed his condition as reflex sympathetic dystrophy of his right foot, a neurological syndrome characterized by acute pain and motion loss due to inflamed nerves and nerve endings. Admin. R. at 118.

According to Brown, the onset date of his disability was February 28, 1996. Brown first filed an application for Social Security Disability Income benefits in March 1996; his application was denied initially by the Social Security Administration and again on reconsideration. In September 1997, Brown sought review of the agency's decision before an administrative law judge ("ALJ"). The ALJ to whom the matter was assigned conducted a hearing and concluded that Brown was not disabled. The ALJ's decision became the Commissioner's final decision on December 4, 1998 when the Appeals Council denied Brown's request for review. *See Casey v. Sec'y of Health & Human Servs.,*

987 F.2d 1230, 1233 (6th Cir.1993). Brown then sought judicial review of the ALJ's decision in federal district court, pursuant to 42 U.S.C. § 405(g). The matter was referred to a Magistrate Judge, who concluded that substantial evidence supported the ALJ's decision. The district court agreed with and adopted the Magistrate Judge's Report and Recommendation and granted the Commissioner's motion for summary judgment.

## II. Analysis

### A. Jurisdiction

The district court judge had jurisdiction to review the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). This court has jurisdiction to review the district court's decision under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291 after Brown filed a timely appeal.

### B. Standard of Review

■ This court reviews the ALJ's final decision to determine whether the ALJ applied the correct legal standard and supported his decision with substantial evidence based on the record as a whole. *See* 42 U.S.C. § 405(g); *see also Walters v. Comm'r of Soc. Sec. .,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence means more than a scintilla of evidence but less than a preponderance. It means "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Walters,* 127 F.3d at 528 (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). This court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.* (quotation omitted). An ALJ's decision is not subject to reversal simply because there is substantial evidence that would support the opposite conclusion than that reached

by the ALJ. *See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

Under 42 U.S.C. § 423(a), a person is entitled to disability insurance benefit payments if he (1) is insured for disability insurance benefits; (2) has not attained retirement age; (3) has filed an application for disability insurance benefits; and (4) is under a disability. This case presents the question whether Brown is under a "disability" as required by the Social Security Act ("Act"). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S .C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a) (2000). To meet this definition, a claimant must have an impairment so severe "that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a). The ALJ must engage in a five-step decisionmaking process as set out in agency regulations to determine whether the claimant has a disability. The five steps are as follows: (1) If claimant is doing substantial gainful activity, he is not disabled; (2) If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled; (3) If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry; (4) If claimant's impairment does not prevent him from doing his past relevant work, he is not

disabled; (5) Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors, such as age, education, and past work experience, he is not disabled. *See* 20 C.F.R. § 404.1520; *see also Walters*, 129 F.3d at 529. The instant case involves the ALJ's decision at the fifth step of this analysis.

### C. Whether the Commissioner's Decision Was Supported by Substantial Evidence

In his analysis, the ALJ first determined that Brown had not engaged in substantial gainful activity since February 28, 1996. The ALJ then determined that Brown has a "severe" impairment due to the pain and swelling in his right foot but that it did not meet any of the disabling criteria in 20 C.F.R., pt. 404, subpt. P, app. 1. In his assessment of Brown's functional limitations, the ALJ found that Brown's testimony regarding his level of pain was not fully credible based on the objective medical evidence. The ALJ then found that while Brown was unable to perform his past relevant work, his residual functional capacity allowed him to execute unskilled sedentary work. Based on Brown's capacity for sedentary work and his age, education, and skill set, the ALJ then applied the medical-vocational grid at 20 C.F.R., pt. 404, subpt. P, app. 2 ("the grid"), which directed a finding of "not disabled." However, the ALJ noted that Brown's ability to perform the full range of sedentary work was "reduced by the need to elevate his right leg to footstool level and the need to limit work activity to the least amount of physical exertion in the upper extremities." Admin. R. at 16 (ALJ's Op.). While emphasizing that Brown suffers from additional nonexertional limitations which the grid does not accommo-date, the ALJ reiterated that Brown is not disabled because there are a significant number of jobs in the national economy that he can perform, including bench-type work such as visual inspection, sorting, simple assembly, machine operation, as well as working as a lobby or information clerk.

Brown contests the ALJ's determination that his testimony regarding his pain, limitations, and restrictions was not credible. Brown also contests the ALJ's finding that his foot only needed to be elevated to footstool height as opposed to chair height. Because the ALJ did not find Brown's testimony credible, the ALJ rejected the Vocational Expert's ("VE") opinion that a person who experienced Brown's stated levels of pain and swelling could not perform substantial gainful activity. Instead, the ALJ relied on the VE's opinion that there were 14,000 jobs that would accommodate a person with all of Brown's physical limitations.

A claimant has the ultimate burden to prove the existence of a disability. However, when the claimant has established that he can no longer perform his past relevant work, as in this case, the burden shifts to the Commissioner to establish that the claimant retains the residual functional capacity to perform other substantial gainful activity existing in the national economy. *See Key*, 109 F.3d at 274; *Walters*, 127 F.3d at 529. The Commissioner can often meet his burden at the fifth step of the analysis by referring to the medical-vocational grid at 20 C.F.R. pt. 404, subpt. P, app. 2, which measures whether a person is disabled based on his or her age, education, and work experience. *See Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990). However, if a claimant has both

exertional and nonexertional limitations,[1] as the ALJ found in the instant case, the ALJ is not permitted to rely on the grid alone to determine whether the claimant has a disability. *See Born*, 923 F.2d at 1174; *see also* 20 C.F.R. § 404.1569a(d); pt. 404, subpt. P, app. 2, § 200.00(e)(2) (the grid only "provide[s] a framework for consideration of how much the individual's work capability is further diminished" by nonexertional limitations). If a claimant's nonexertional limitations prevent the claimant from doing the full range of work at the designated level, then the Commissioner must come forward with some reliable evidence showing that there remains a significant number of jobs that the claimant can perform, taking into account all of the claimant's limitations. *See Shelman v. Heckler*, 821 F.2d 316, 321–22 (6th Cir. 1987). The Commissioner may meet his burden in this respect by relying on the testimony of a vocational expert. *See Born*, 923 F.2d at 1173–74; *Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 282 (6th Cir.1985); *see also* 20 C.F.R. § 404.1566(e).

Bearing in mind our deferential standard of review, this court must first determine whether the ALJ properly assessed Brown's residual functional capacity ("RFC") in light of Brown's exertional and nonexertional limitations and the record evidence. A claimant's RFC is a measure of what the claimant can still do despite his limitations. *See* 20 C.F.R. § 404.1545(a). It is an assessment "based upon all of the relevant evidence" including the claimant's own descriptions of limitations that go be-

yond the symptoms of the impairment, such as pain; observations by the claimant's treating or examining physicians, including medical records; and observations by other relevant witnesses. *See id.* In this case, after taking into consideration Brown's age, education, and work experience, the ALJ limited Brown to unskilled[2] sedentary work, which involves:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The ALJ then considered two additional restrictions on Brown's ability to perform sedentary work, namely the requirement that he be allowed to elevate his foot and refrain from activity involving upper body exertion. In making this decision, the ALJ relied on only a portion of the VE's testimony. At the hearing, the ALJ asked the VE whether there were any sedentary, unskilled jobs in the metropolitan Detroit area where an individual could work if he had the option of elevating his foot on a footstool; could sit up to eight hours a day; had little or no physical exertion of the upper extremities: and could lift up to ten pounds. Admin. R. at 155–56 (Tr. of Hr'g). The VE responded that there were approximately 14,000 suitable jobs in the

---

**1.** Exertional limitations affect a claimant's ability to perform the strength requirements of a job. *See* 20 C.F.R. § 404.1569a(a). Such limitations determine whether a claimant can only perform, for example, sedentary work. Nonexertional limitations are those that affect the ability to meet the demands of a job other than strength. *See id.*

**2.** Unskilled work involves: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength.... [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. § 404.1568(a).

Southeast Michigan area in which a person could perform a limited range of unskilled sedentary work. The ALJ then asked the VE whether an individual with Brown's amount of pain and swelling of the right foot, who elevated his foot to chair height, could function in a gainful activity. The VE responded in the negative. Admin. R. at 157. In his findings, the ALJ did not rely on the VE's response to the second hypothetical because the ALJ concluded that Brown's assessment of his pain was not credible.

■ In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant. *See Walters*, 127 F.3d at 531. Moreover, "an ALJ's findings based on the credibility of the claimant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* Nevertheless, the ALJ's assessment must be supported by substantial evidence. *See id.* An individual's statements as to "pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a). This court has developed a two-prong test to evaluate a claimant's assertions of disabling pain. "First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Walters*, 127 F.3d at 531.

The record evidence supports the ALJ's conclusion that Brown's testimony regarding his pain was not credible. While all of the physicians who evaluated Brown concluded that he suffered from reflex sympathetic dystrophy ("RSD"), they were not in agreement concerning the degree to which Brown was limited by the pain he experienced. Only one physician, Dr. Phipps, who evaluated Brown in September 1997, suggested that Brown could not perform any kind of work. His opinion was contradicted by the other examining physicians. For example, Dr. Patel, who evaluated Brown on May 20, 1996 for the Social Security Administration, reported that while Brown suffered from RSD with "swelling, pain and severe limitation of the range of motion of the right foot," Admin. R. at 86, Brown was able to sit and stand, bend and stoop, as well as push and pull the normal weight for his age and sex. Dr. Patel recommended that Brown walk with a cane temporarily until treated for RSD. In October, 1996, Dr. Roth evaluated Brown at the request of Brown's attorney. Dr. Roth determined that most of Brown's symptoms appeared to be mostly related to disuse and inactivity, although he stated that he could not rule out RSD. He could not fully evaluate Brown because he was not provided with Brown's medical records, but he did state that Brown should continue to modify his work activities to a sitting job of four hours a day, with his right foot elevated most of the time. Admin. R. at 110. Based on a thorough review of Brown's medical records, we conclude that there is contradictory evidence regarding the severity of Brown's pain arising from his injury. Moreover, the medical evidence was not conclusive regarding whether the medical condition is of such severity that it can reasonably be expected to produce disabling pain.

The regulations indicate that if a disabling severity cannot be shown by objective medical evidence alone, the Commissioner may also consider other factors, such as how the claimant's symptoms affect his daily activities; precipitating and aggravating factors; the type and dosage of medication taken; and any measures used by

the claimant to relieve pain. *See Walters,* 127 F.3d at 531; *see also* 20 C.F.R. § 404.1529(c)(3). The ALJ did not dispute the physicians' conclusion that Brown has a "severe" impairment but, when weighing Brown's testimony regarding his pain and physical limitations against his testimony about his lifestyle and his level of medication, the ALJ concluded that Brown's "testimony as to his level of pain in [sic] not credible based upon the objective medical report." Admin. R. at 14 (ALJ Op.). At the hearing before the ALJ, Brown stated that he had held a sedentary job at the same factory at which he was injured but that he could not work for more than four hours a day because his foot would swell and become more painful, even when it was elevated on a chair. Admin. R. at 136–38 (Brown's Test.) He also testified that he cannot stand on his foot for long periods of time and that his foot usually swells four days of the week. However, Brown testified that he spends his days sleeping or watching television, presumably in a seated position, often with his foot elevated on a chair. This portrait of Brown's daily activities is not inconsistent with the ALJ's finding that Brown can perform a limited set of sedentary activities, where he is seated for much of the day and may elevate his foot should he so choose. Brown also testified that he goes to the mall with his cousin and best friend to walk around on the weekends, where he can usually walk for ten minutes and then has to sit down. He also drives two or three blocks about twice a week, with his left foot. The record also reflects that twice a month he goes to the movies and is able to sit through the movie. This evidence further supports the ALJ's conclusions that Brown's pain does not completely inhibit him from performing sedentary activities. As to his pain levels, Brown testified that his foot gave him constant pain, which increased when his foot was

swollen, and that the pain sometimes kept him up at night. However, the record indicates that Brown takes only two medications: Darvocet, which he takes every day for the pain and Elavil, to help him sleep at night. The ALJ found that this amount and kind of medication is inconsistent with the incapacitating and chronic pain from which Brown allegedly suffers.

When viewed as a whole, the record clearly provides substantial evidence for the ALJ's credibility determination. Because we conclude that the ALJ properly assessed Brown's credibility, we see no error in the ALJ's decision to rely on the portion of the VE's testimony that is consistent with the ALJ's credibility finding. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only if the question accurately portrays [plaintiff's] individual physical and mental impairments." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.1987) (internal citation omitted). In this case, the ALJ's second hypothetical did not accurately portray Brown's physical limitations. Thus, the ALJ properly relied on only the first hypothetical when making his residual functional capacity determination. Our review of the record, including Brown's testimony, the VE's testimony, and the medical records, also leads to our conclusion conclude that the ALJ has provided reliable evidence, in the form of the VE's testimony, that supports the ALJ's residual functional capacity determination.

Moreover, we also conclude that the ALJ's determination that Brown needed to elevate his foot to footstool height, as opposed to chair height, is supported by substantial evidence in the record. There is no evidence in the medical records to support Brown's contention that his foot must be elevated to a certain height. Although

Brown stated that he continued to experience pain when his foot was elevated to chair height, the ALJ was not required to credit Brown's own assessment of his limitations.

### D.  "Secondary Gain" Claim

Brown also argues that the Appeals Council's use of the term "secondary gain" in its December 4, 1998 order denying review of the ALJ's decision necessitates a remand to the Commissioner for a determination of the psychiatric implications of that finding.  In its order, the Appeals Council addressed a contention from Brown's lawyer that the ALJ impermissibly considered Brown's $27,000 worker's compensation settlement as a factor in its determination that Brown was not disabled.[3]  The Appeals Council explicitly noted that it was reviewing Brown's contentions raised in his request for review from October 29, 1997, when it stated:

> The Appeals Council considered the contention that the Administrative Law Judge was unfair to consider your workers' compensation when considering your credibility and willingness to return to the work force.  The Administrative Law Judge, as the trier of fact, is required to consider all facets of a case in determining a claimant's credibility, including any non-medical factors which can be seen to affect an individual's motivation in returning to work.  Therefore, it is within the Administrative Law Judge's jurisdiction to consider other income sources and secondary gain in determining credibility.

Admin. R. at 4. Based on the language of the Appeals Council's decision, there is no evidence to support the claim that the

Appeals Council independently raised or improperly considered the issue of Brown's receipt of worker's compensation, nor is there evidence that the Appeals Council implied that Brown suffered from the psychiatric condition "secondary gain." Thus, this claim is totally without merit and must fail.

### III.  Conclusion

Because we find that both of Brown's claims are without merit, we AFFIRM the district court's decision to deny Brown disability benefits.

**3.**  In Brown's request for review, he argued that "[t]he ALJ has drawn an unfair and impermissible inference due to the claimant's securing a settlement of workers' compensation, his decline to return to work force. There is nothing in the medical evidence to support this obvious prejudgment."  Admin. R. at 7 (Request for Review of Hr'g Decision).