Jerry R. **HURT**, Plaintiff-Appellant,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES**, Defendant-Appellee.

No. 86–5483.

United States Court of Appeals, Sixth Circuit.

Submitted March 20, 1987.
Decided April 24, 1987.

Harold M. Streets, Greenville, Ky., for plaintiff-appellant.

Alexander Taft, U.S. Atty., Louisville, Ky., James H. Barr, Barbra Murley Harris, for defendant-appellee.

Before ENGEL and GUY, Circuit Judges; and PECK, Senior Circuit Judge.

PER CURIAM.

Plaintiff, Hurt, appeals from the Secretary's decision denying social security disability benefits. His alleged disability stems from a serious motorcycle accident which occurred on January 27, 1982. There is no real medical dispute about either the nature or extent of his injuries. Further, it is undisputed that he has not engaged in substantial gainful activity since January 27, 1982. He suffers from a severe impairment and he cannot perform his past relevant work. The administrative law judge (ALJ) determined that Hurt had the residual functional capacity to perform sedentary work and then applied the grids (20 C.F.R., Part 404, Subpart P, Appendix 2, Table No. 1, Rules 201.24 and 201.25) to reach his conclusion of not disabled.

Upon review, we conclude that this case must be remanded as we find the application of the grids to have been improper under these facts and we also raise, but do not decide, the issue of the applicability of the listing of impairments found in 20 C.F.R., Part 404, Subpart P, Appendix 1.

## I.

Although there are a plethora of social security disability cases and appeals, there continues to be confusion concerning the application of the medical-vocational guidelines commonly known as the "grids." 20 C.F.R. § 404.1501, *et seq.* It is frequently stated that the grids *determine* disability or non-disability. This is misleading if not actually erroneous. As this court stated in *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983):

When the claimant does indeed match one of the grid's patterns, then all the grid does is announce that substantial gainful work in the national economy is available for that particular individual; in other words, once a finding is made that the individual can do light work, for example, the grid operates to declare that light work is available.

667 F.2d at 535. Thus, the grids are a shortcut that eliminate the need for calling in vocational experts. They tell us nothing, however, about the degree of disability and what the residual functional capacity of an

individual might be. Because of this very limited function of the grids, we held in *Kirk* that "if the characteristics of the claimant do not *identically* match the description in the grid, the grid is used only as a guide to disability determination." 667 F.2d at 528 (emphasis added). *Kirk* also teaches that "the grid specifically disclaims an ability to predict disability when nonexertional limitations are the focus of a claimant's impairment." *Id.* at 528. Lastly, *Kirk* commands "that the grid only applies if the individual is capable of performing a wide range of jobs at the designated level—i.e., sedentary, light or medium." *Id.* at 529.

When these principles are applied to the facts here, it appears that the application of the "sedentary work grid" was erroneous because Hurt cannot perform the full range of sedentary work. We need only consider one of his medical problems-his fractured left arm which at the time of the hearing left him in a condition where he had a poor to incomplete grasp and could lift no more than five pounds. He would thus be severely limited insofar as sedentary jobs requiring bilateral manual dexterity are concerned.[1]

We note also that although the inability to lift over five pounds may be an exertional limitation, the loss of manipulative capacity is a nonexertional limitation. 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.-00(e). Under such circumstances the Secretary's regulations provide:

> (2) However, where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of

disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor.

20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(e)(2) (1986).

In short, the use of the grid was inappropriate because the predicate for using the grid, i.e., that Hurt could perform a full range of sedentary activities, was missing. We hasten to add that this does not mean that on remand Hurt may not be found capable of sedentary work that is available and thus not disabled.

## II.

We also remand for a further examination as to whether Hurt's left arm injuries do not in fact meet the listing of impairments found in Appendix 1. The ALJ makes the assertion that Hurt's injuries do not amount to "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." (App. 41). In look-

---

1. The Secretary's own regulations set forth a situation when the grids will *not* supply the answer in a situation parallel to that here:

    However, a finding of disabled is not precluded for those individuals under age 45 who do not meet all of the criteria of a specific rule and who do not have the ability to perform a full range of sedentary work. The following examples are illustrative:

    Example 1: An individual under age 45 with a high school education can no longer do past work and is restricted to unskilled sedentary jobs because of a severe medically determinable cardiovascular impairment (which does not meet or equal the listings in Appendix 1). A permanent injury of the right hand limits the individual to sedentary jobs which do not require bilateral manual dexterity. None of the rules in Appendix 2 are applicable to this particular set of facts, because this individual cannot perform the full range of work defined as sedentary.

    20 C.F.R., Part 404, Subpart P, Appendix 2, § 201.00(h).

**1144**

ing at § 1.12 of Appendix 1, we note, however, that it lists:

*Fractures of an upper extremity* with non-union of a fracture of the shaft of the humerus, radius, or ulna under continuing surgical management directed toward restoration of functional use of the extremity and such function was not restored or expected to be restored within 12 months after onset.

As recently as August 8, 1983, Dr. Schell reported that "he [Hurt] continues to have difficulty with full extention of the left arm and *he has a nonunion of his left ulnar fracture.*" (App. 8) (emphasis added). Dr. Quader reported on July 26, 1983, that "[h]is fracture is healing, although it is slow." (App. 29). The medical reports of record make it clear that although the doctors are hoping that this non-union ulnar fracture will heal itself, the "patient might have to have a bone graft on the ulna...." (Dr. Allen report, Apr. 15, 1982, App. 194). We note this condition has exceeded twelve months in duration. We emphasize that we are not holding that § 1.12 of Appendix 1 is in fact applicable but, on remand, further exploration is warranted.

REMANDED for further proceedings consistent with this opinion.