911 F.2d 733
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit
Arson RATLIFF, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-6375.
 United States Court of Appeals, Sixth Circuit.
 Aug. 21, 1990.
 
 Before MILBURN and RALPH B. GUY, Jr. Circuit Judges, and JORDAN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Arson Ratliff ("claimant") appeals the summary judgment entered by the district court in favor of the Secretary of Health and Human Services affirming the Secretary's denial of Social Security disability benefits. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Claimant's application for benefits was filed on April 2, 1985, alleging disability from black lung, thyroid problems, and arthritis of the spine. The application was denied initially, upon reconsideration, and after a hearing before an ALJ. The Appeals Council, however, remanded for consideration of a possible mental impairment. After the remand the claim was again denied following a second hearing before an ALJ, and the ALJ's opinion became the final decision of the Secretary when the Appeals Council denied claimant's request for review. This timely appeal follows review by the district court.
 
 B.
 
 3
 Claimant has a seventh-grade education and was 57 years old at the time of the second administrative hearing. His past relevant work was as a coal mine mechanic and was classified as heavy-skilled by a vocational expert ("V.E.") testifying at the hearing.
 
 
 4
 At the second hearing, the claimant testified to a number of alleged disabilities--breathing problems, a memory problem, ulcers, high blood pressure, arthritis, weakened grip and nervousness. The medical reports of doctors Robert Penman, M.D.; Frank Varney, M.D., Harvey Page, M.D.; William Anderson, M.D.; and Ballard Wright, M.D., support a diagnosis of stage one or stage two pneumoconiosis. Despite x-ray evidence of lung deposits, the majority of the medical reports reflected normal or near normal pulmonary function. Some EKGs showed minor deviations from normal such as nonspecific T-wave changes; however, Dr. Page, the treating physician, reported a normal EKG. Dr. Page also reported hypothyroidism which, according to the claimant's testimony, was controlled by medication.
 
 
 5
 At the request of his attorney, claimant was examined for psychiatric and psychological impairments at the Bluefield Mental Health Center. A report from Bluefield placed the claimant in the borderline range of intelligence and characterized him as a chronic psychoneurotic individual with considerable memory impairment. The report noted difficulty with concentration and attention. The diagnosis was generalized anxiety, dysthymic disorder, and borderline intelligence with an I.Q. of 78. The Bluefield report reflected an opinion that Ratliff's psychological problems were caused by his inability to work and his "intense preoccupation with his difficulty breathing." The report opined that the claimant was totally disabled from any type work.
 
 
 6
 Dr. Bruce Guberman, M.D., examined the claimant as a consultant for the Kentucky Disability Determination Division ("DDD"). Dr. Guberman found evidence of obstructive airway disease but noted that claimant's breathing was unlabored and that he did not appear short of breath after mild exertion. No wheezing, rales or rhonchi were detected, and claimant's heart sounds were normal. Claimant was obese but unhampered in his ability to move around and change position. Dr. Guberman noted some diminished range of motion and tenderness in the back; however, there was no indication of nerve root compression, no muscle spasm and reflexes were brisk. Dr. Guberman found these symptoms suggestive of generalized degenerative joint disease.
 
 
 7
 After the second hearing, claimant was sent to Dr. Mettu, M.D., for a consultative exam. Dr. Mettu reported no evidence of rales, rhonchi or wheezing. Heart sounds were normal, and an EKG was interpreted as normal. Despite a clinical impression including hypothyroidism, arthritis, hypertension, chest pain, gastric pain, and bronchitis, Dr. Mettu found little functional limitation. Claimant's ability to lift, stand, walk and carry was not affected nor was his ability to reach, handle, etc. Dr. Mettu reported some environmental restrictions from the bronchitis and stated that the claimant should not be forced to sit for long periods of time without interruption.
 
 
 8
 Also after the second hearing, Dr. Eric Johnson, Ph.D., saw the claimant as a consultant for the DDD. Dr. Johnson reported that the claimant could read at the eighth-grade level and had an I.Q. between 87 and 91. Results on the MMPI suggested anxiety and depression.
 
 
 9
 Dr. Johnson reported that the prognosis for treatment of the depression was good; however, the prognosis for vocational training was rated as guarded. This was because Dr. Johnson believed the psychological symptoms were compounded by the claimant's physical symptoms. Dr. Johnson stated that the claimant could not cope with work stresses at the time of the examination. Nevertheless, Dr. Johnson reported that the claimant had a good ability to follow work rules and use judgment in the workplace. Claimant had an unrestricted ability to understand, remember and carry out simple job instructions. Dr. Johnson reported a good ability to maintain personal appearance, behave in an emotionally stable manner, and relate predictably in social situations.
 
 
 10
 At the hearing, the ALJ asked a V.E. to assume an individual with claimant's age, education, and work experience with nonexertional limitations of an inability to de complex tasks, inability to work in a dusty fume-laden atmosphere, inability to perform rapid head movements from side to side, a mild hand tremor causing loss of fine motor function, and an I.Q. in the mid-70s. The V.E. testified that with these limitations the claimant could not do his past relevant work; however, he could perform approximately 60% of the unskilled jobs available at the medium exertional level, 80% at the light exertional level, and 30% at the sedentary level. The V.E. gave examples of jobs numbering in the thousands.
 
 
 11
 The ALJ asked the V.E. whether the claimant's alleged inability to grip or to concentrate, if true, would alter the opinion, and the V.E. answered affirmatively. Accordingly, the ALJ referred the claimant to Drs. Mettu and Johnson for further evaluation and submitted the reports of both doctors to the V.E. for his consideration. The V.E. was asked to assume the accuracy of both reports. Noting the higher I.Q. and reading ability shown in Dr. Johnson's report, and the good prognosis for treatment of claimant's depression, the V.E. found no need to significantly change his original opinion.
 
 
 12
 Despite the claimant's inability to do his past work, the ALJ found that the claimant had the residual functional capacity for a full range of medium work reduced by the nonexertional limitations of his low I.Q., his inability to follow complex job instructions, his inability to work in a dusty or fume-laden atmosphere, his inability to do fine manipulation, and his inability to perform rapid head movements from side to side. In his listed findings the ALJ stated that the claimant's nonexertional limitations did not significantly compromise the ability to perform unskilled medium exertional work. Thus, using the grids as a framework for decisionmaking, the ALJ found that the claimant was not disabled. From the body of the ALJ's opinion, it is clear that the ALJ based his finding on his acceptance of the testimony of the V.E.
 
 
 13
 The issue presented in this appeal is whether the finding that the claimant could perform substantial gainful activity at the medium exertional level is supported by substantial evidence.
 
 II.
 A.
 
 14
 In reviewing a denial of Social Security benefits, we do "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). Our inquiry is "whether the Secretary's findings are supported by substantial evidence and whether the Secretary correctly applied the law." Mullis v. Bowen, 861 F.2d 991, 992-93 (6th Cir.1988). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). If there is substantial evidence in the record as a whole to support the Secretary, it is irrelevant that the record may also contain substantial evidence to support a conclusion different from that reached by the Secretary. Atterberry v. Secretary of Health & Human Serv., 871 F.2d 567, 569 (6th Cir.1989).
 
 B.
 
 15
 Ratliff attacks the Secretary's findings with two arguments. The last argument is analyzed first because it impacts upon the first. Claimant argues that there is no support in the record for the ALJ's conclusion that the subjective complaints were not fully credible. The ALJ gave very specific reasons for his conclusion that the claimant was not fully credible. The ALJ noted that claimant was very exact as to his ailments but vague as to his limitations from those ailments. The ALJ also noted that the alleged mental impairments were not mentioned until after the denial of benefits following the first administrative hearing. The ALJ further found inconsistency between the near normal lung functions and the allegations of severe shortness of breath. Moreover, the ALJ observed at the hearing an individual markedly different from the person described by the Bluefield Mental Health Clinic.
 
 
 16
 An ALJ's conclusion with respect to the credibility of a witness must be given deference, especially where as here it is supported by specific reasons for finding a lack of credibility. Hardaway v. Secretary of Health & Human Serv., 823 F.2d 922, 928 (6th Cir.1987) (per curiam); see Auer v. Secretary of Health & Human Serv., 830 F.2d 594, 595 (6th Cir.1987) (per curiam); Crisp v. Secretary of Health & Human Serv., 790 F.2d 450, 453 (6th Cir.1986) (per curiam). Given the ALJ's credibility determination, the normal EKGs, the high functional ratings by Dr. Mettu, and the scarcity of evidence confirming the likelihood of severe pain from any of claimant's alleged impairments, there was substantial evidence for discounting functional loss from the alleged impairments.
 
 
 17
 Turning now to claimant's first argument, that the ALJ erred in looking to the grids, we first note that Ratliff has nonexertional limitations as recognized by the ALJ. Where a claimant suffers from an impairment that does not manifest itself as a limitation on strength, "rote application of the grid is inappropriate." Abbott v. Sullivan, --- F.2d ---, ---- (6th Cir.1990) (No. 89-2119, slip op. at 16). In the case of a claimant with both exertional and nonexertional impairments, where the grid does not direct a finding of disabled, the grid may be used only as a framework for decisionmaking and must be supplemented by the testimony of a V.E. or other similar evidence. Id. at 17-19; see Hurt v. Secretary of Health & Human Serv., 816 F.2d 1141 (6th Cir.1987) (per curiam).
 
 
 18
 Thus, the force of Ratliff's argument depends on whether the ALJ looked exclusively to the grids, or to the grids as a framework supplemented by other evidence. In the body of his opinion, the ALJ made clear that he accepted the testimony of the vocational expert and based his findings upon the acceptance of that testimony. Moreover, the ALJ's listed findings clearly stated that the grids were only being used as a framework. Accordingly, we do not find Ratliff's argument concerning use of the grids persuasive.
 
 
 19
 In a related argument, the claimant asserts there is not substantial evidence to support the finding that his pulmonary disease did not significantly affect his ability to perform medium exertional work. Dr. Mettu found that the claimant was unrestricted in his ability to lift, carry, walk or stand. The claimant's treating physician, Dr. Page, diagnosed pulmonary disease; however, the only restriction Dr. Page placed on the claimant was the ban on working in a dusty atmosphere--a factor accounted for by the ALJ. There were repeated tests showing normal or near normal arterial blood gases and lung capacity. Thus, there was substantial evidence for concluding that the claimant's pulmonary disease did not affect his ability to perform medium exertional work.
 
 
 20
 Claimant also argues that the ALJ completely ignored the psychiatric evidence. We disagree. The ALJ thoroughly explained why he accorded little weight to the report of the Bluefield Mental Health Clinic. The ALJ found it significant that none of the doctors other than the psychological examiners mentioned any indication of anxiety or nervous disorder. In fact, at least one of the examining physicians noted that the claimant's intellectual functioning and mental status appeared normal. Perceptively, the ALJ noticed that the Bluefield Mental Health Clinic placed considerable emphasis on claimant's fear of being unable to breathe. The ALJ found it "difficult to imagine an individual who could breathe without restriction and who has normal arterial blood gases would be anxious over his ability to breathe." J.A. 18.
 
 
 21
 The only other examination of the claimant for mental impairments was by Dr. Johnson. It is true that Dr. Johnson stated in the body of his report that the claimant could not cope with work stresses; however, it is the prerogative of the Secretary and not medical personnel to make the legal determination of disability. Duncan v. Secretary of Health & Human Serv., 801 F.2d 847, 855 (6th Cir.1986). This determination must be made on the record as a whole rather than focusing on one piece of evidence to the exclusion of other evidence. Hardaway v. Secretary of Health & Human Serv., 823 F.2d 922, 927 (6th Cir.1987) (per curiam).
 
 
 22
 When the whole of Dr. Johnson's report is considered in the context of the whole record, the report supports a finding that the claimant could perform simple low-stress work. Dr. Johnson stated that the claimant's psychological symptoms depended largely upon his physical symptoms. Given the scarcity of evidence of serious physical limitations and the discrediting of claimant's credibility, there was reason to discount the severity of the psychological impairments.
 
 
 23
 Dr. Johnson admitted that the prognosis for treating the depression was good. Claimant had a good ability to follow work rules, use judgment, carry out detailed job instructions, maintain his personal appearance, behave in an emotionally stable manner and relate predictably to social situations. Moreover, Dr. Johnson's reported was submitted to the V.E., and the V.E. was instructed to reconsider his opinion assuming the accuracy of Dr. Johnson's report. After reviewing Dr. Johnson's report, the V.E. was convinced the claimant could perform the great majority of unskilled, low-stress jobs identified at the hearing.
 
 
 24
 In short, we find substantial evidence to support the finding that Ratliff had the exertional capacity for medium work. We also find substantial evidence for the factual assumptions underlying the hypothetical question posed to the V.E. Therefore, we hold that the framework of the grids, as supplemented by the testimony of the V.E., provides substantial evidence that Ratliff can perform a significant number of jobs available in the regional and national economies. See Varley v. Secretary of Health & Human Serv., 820 F.2d 777, 779 (6th Cir.1987); Bradford v. Secretary of Health & Human Serv., 803 F.2d 871, 873-74 (6th Cir.1986) (per curiam).
 
 III.
 
 25
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation