Vernon ISAAC, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

No. C2–91–264.

United States District Court, S.D. Ohio, E.D.

Jan. 9, 1992.

Frank Jerome Neff, Columbus, Ohio, for plaintiff.

Joseph E. Kane, Asst. U.S. Atty., for defendant.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

Plaintiff, Vernon Isaac, filed this action seeking a review of a final decision of the Secretary of Health and Human Services ("Secretary") denying his application for social security disability and supplemental security income benefits. That application, which was filed on May 25, 1989, alleged that plaintiff became disabled on January 26, 1987 as a result of a back injury.

After initial administrative denials of his claim, plaintiff was afforded a hearing before an Administrative Law Judge on February 7, 1990. In a decision dated May 4, 1990, the Administrative Law Judge denied benefits. That decision became the final decision of the Secretary when the Appeals Council denied review on February 15, 1991.

Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this court on June 4, 1991. Plaintiff moved for summary judgment on July 5, 1991, and the Secretary responded on July 31, 1991. No reply brief has been filed.

Plaintiff, now 45 years old, testified to the following at the administrative hearing. He has a ninth grade education but has difficulty reading and writing. (Tr. 28). He cut timber for a living until he was hit with a falling tree limb on January 27, 1987. Since then he has suffered from constant back pain which radiates from between his shoulders through to his chest. (Tr. 28–29). He has also had a lifelong hearing deficiency. (Tr. 30).

Plaintiff testified that he can stand for approximately 20 minutes and sit about the same length of time. However, he has no difficulty walking. (Tr. 31). He does have pain on reaching, and can lift no more than five to ten pounds. (Tr. 31–32). He can drive a car, but not for a very long period of time. (Tr. 32). He did not believe he would be able to cut timber any longer because he could not lift the saw and could not stand its vibration. (Tr. 40).

Pertinent medical records reveal the following. Plaintiff was admitted to Holzer Medical Center on January 26, 1987 with compression fractures of T–5 and T–7. He had pain on motion at that time. He was fitted with a back brace and was up and walking the next day. He was discharged on January 28, 1987. (Tr. 98–102). He was X-rayed over the next several months and his condition was essentially stable. (Tr. 103–07). Clinic notes indicate that he continued to report pain during that period of time. (Tr. 111–14).

Dr. Ball, in a report dated on August 2, 1989, stated that he had been treating plaintiff since December 15, 1988 for pain in the neck, low back, and anterior and posterior chest areas. He noted mild spasm of the mid-thoracic and upper lumbar areas. He did not detect any motor or sensory deficits, stated that plaintiff walked without apparent difficulty, was able to drive himself to and from the appointment and got up and down from the examining table without any apparent problem. Other than avoiding heavy lifting, Dr. Ball believed that plaintiff could work. He restricted him to lifting weights less than 35 pounds at a time. (Tr. 115).

Plaintiff underwent a psychological assessment on January 24, 1990. The psychologist, Dr. Lowe, reported that plaintiff showed evident pain behavior during his interview. He also reported left side weakness stemming from a 1970 automobile accident.

Plaintiff did not show any problem with concentration or ability to attend to questions and tasks during the interview. He stated that he believed he related well to other people, although he also said that he never leaves home by himself. His scores on the MMPI showed an individual with a high level of somatic concern. Dr. Lowe interpreted the scores to show "a long standing personality adjustment...." She also believed that his profile suggested chronic tension and anxiety, but only a moderate level of depression. Dr. Lowe diagnosed dysthymia, a dependent person-

ality disorder, and borderline intellectual functioning. She believed that he met § 12.08 of the Listings of Impairments based upon the severity of his personality disorder. (Tr. 116–23).

Dr. Lowe also completed a residual functional capacity questionnaire relating to plaintiff's mental functioning. She concluded that he showed moderate impairment in several areas, including accepting instructions from or responding appropriately to criticism from supervisors and maintaining his personal appearance and hygiene. She believed he showed marked deficiencies in his ability to tolerate customary work pressures, work at a consistent pace, and work independently. She believed his ability to meet expected production levels was extremely impaired. (Tr. 124–27).

Based on this evidence, the Secretary concluded that plaintiff could not do his past work as a timber cutter, and that he suffered from impairments best described as bilateral hearing loss, dependent personality disorder, and status post T–5 and T–7 compression fracture. He believed that plaintiff was not restricted in his ability to work other than being unable to lift more than 20 pounds or to perform work requiring fine hearing. He did not believe that plaintiff could carry out complex and technical job instructions, but concluded that plaintiff was otherwise psychologically unimpaired. Using the Medical–Vocational Guidelines ("grid") as a framework for decision-making, he concluded that plaintiff was not disabled.

In his motion for summary judgment, plaintiff asserts that the Secretary did not give appropriate weight to Dr. Lowe's conclusions as to his functional capacity. In particular, he asserts that Dr. Lowe pointed out problems in addition to the inability to follow complex and technical job instructions which, taken together, constitute a severe non-exertional impairment. Under those circumstances, plaintiff claims that the Secretary's reliance upon the grid was error, and that vocational testimony should have been elicited to demonstrate that plaintiff could perform substantial gainful employment. These contentions raise the underlying question of whether the Secretary's decision is supported by substantial evidence.

■ *Standard of Review.* Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. ..." Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Company v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). It is " 'more than a mere scintilla.' " *Id. LeMaster v. Weinberger,* 533 F.2d 337, 339 (6th Cir.1976). The Secretary's findings of fact must be based upon the record as a whole. *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir.1985); *Houston v. Secretary,* 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary,* 733 F.2d 437, 439–440 (6th Cir.1984). In determining whether the Secretary's decision is supported by substantial evidence, the Court must " 'take into account whatever in the record fairly detracts from its weight.' " *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)); *Wages v. Secretary of Health and Human Services,* 755 F.2d 495, 497 (6th Cir.1985). Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983).

■ The Secretary, relying on an unpublished Sixth Circuit decision, *Harrington v. Secretary of HHS,* 810 F.2d 201 (6th Cir. 1986), argues that the use of the grid was appropriate because the only non-exertional limitations which the Secretary found supported by the record were not so severe as to limit significantly the range of jobs which plaintiff could perform. That is, even assuming plaintiff is limited to per-

forming jobs not involving complex instructions or fine hearing, the Secretary can conclude, as a matter of common sense and without resort to vocational evidence, that the vast majority of jobs at the sedentary and light exertional levels do not involve either of those requirements. Although the Secretary may accurately have described the holding in *Harrington*, it is applicable here only if the Secretary's finding that plaintiff's non-exertional impairments are less significant than those identified by Dr. Lowe is supported by substantial evidence. Conversely, if the Secretary was required to accept Dr. Lowe's conclusion that, for example, plaintiff was unable to tolerate customary work pressures, work independently or at a consistent pace, or meet expected production levels, reference to the grid would not be appropriate.

The Secretary discounted Dr. Lowe's findings on the following bases. First, he believed that her opinion required corroboration by a psychiatrist. Second, he noted that plaintiff never asserted, independently, that he had any mental health problems. Third, he noted that there was no history of treatment for a mental impairment. Finally, he noted that Dr. Lowe was not a treating professional but simply a one-time examiner. On these bases, he accepted Dr. Lowe's findings only to the extent described above, and rejected the more severe limitations from which she believed plaintiff suffers.

To support this approach, the Secretary relies on *Atterberry v. Secretary of HHS*, 871 F.2d 567 (6th Cir.1989). *Atterberry* held that it was permissible for the Secretary to discount the findings of a one-time examining psychologist, but the Secretary's basis for doing in *Atterberry* differed significantly from that advanced in this case. In *Atterberry*, the court noted that the "[p]sychological examinations administered to the claimant ... failed to reveal a severe psychological impairment." *Atterberry*, 871 F.2d at 572. In particular, the court noted that plaintiff's score on the Rotter Incomplete Sentences Form showed only "general depression," and that his MMPI profile revealed only a tendency toward feeling mildly depressed. General mild depression was, in the court's view, not a sufficiently severe disorder to require the Secretary to conclude that plaintiff suffered from any significant non-exertional impairments.

Here, by contrast, Dr. Lowe's opinion cannot be discounted on the basis that it is unsupported by the results of the tests which she administered. Plaintiff's MMPI showed both a moderate level of depression and chronic anxiety. Dr. Lowe believed that the test results supported a long standing personality adjustment and it is this mental impairment, leading to her diagnosis of both dysthymia and a dependent personality disorder, which led her to conclude that plaintiff would have difficulty in various types of work settings. She also noted that the combination of his impairments, including his anxiety, his hearing difficulties, and his borderline intellectual functioning, would preclude him from working in a number of vocational settings. These conclusions do find support in the tests which were administered.

■ Here, the Secretary may well not be required to accept Dr. Lowe's conclusions in full. In particular, her conclusion that plaintiff has an impairment of Listing severity appears not to be adequately supported. On the other hand, there is support in her report for finding that plaintiff's impairments, taken in combination, produce non-exertional limitations that are sufficiently severe to preclude mechanical application of the grid as a framework for the Secretary's decision. The Sixth Circuit has clearly adopted the rule that when severe non-exertional impairments are present, the grid cannot be applied, but vocational evidence must be obtained. *Damron v. Secretary of HHS*, 778 F.2d 279 (6th Cir.1985). Under these circumstances, the case must be remanded to the Secretary for a more accurate evaluation of the extent to which plaintiff's non-exertional impairments, in combination, affect his ability to perform a full or wide range of work at any particular exertional level, and for the taking of vocational evidence with respect to the issue of his continued employability. This assessment may include

examination by another mental health professional at the request of the Secretary in order to provide a basis for the Secretary's evaluation of the extent of plaintiff's mental impairments, and must include vocational evidence or testimony unless there is substantial medical evidence to support the conclusion that no severe non-exertional impairments are present.

Based upon the foregoing, it is ordered that:

1. The plaintiff's motion for summary judgment is granted to the extent that the Secretary's unfavorable decision is reversed, and this case is remanded for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four. All other pending motions are DENIED.

2. The Clerk shall enter a judgment reflecting that a remand has been ordered, and shall administratively close this case.

3. The Court retains jurisdiction over this case for purposes of entering a final judgment on the merits following additional proceedings on remand.