Adrianne R. FEILD, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. 98–2108 D/A.

United States District Court,
W.D. Tennessee,
Western Division.

Dec. 31, 1998.

Wanda Donati, Donati & Associates, P.C., Memphis, TN, for Adrianne Feild, plaintiff.

Brian J. Quarles, U.S. Attorney's Office, Veronica Coleman, United States Attorney's Office, Memphis, TN, for Kenneth S. Apfel, Commissioner of Social Security, defendant.

## ORDER REVERSING AND REMAND-ING THE CLAIMANT'S CASE

DONALD, District, Judge.

Claimant, Adrianne Feild, filed this appeal after being denied disability benefits by the Commissioner of Social Security. The Administrative Law Judge (ALJ) rendered a ruling against the claimant, and the Appeals Council denied review. The claimant's case is reversed and remanded to the ALJ for reconsideration based upon the correct education level, and possible use of a vocational expert.

### I. BACKGROUND FACTS

The claimant suffers from insulin dependent diabetes mellitus. The claimant maintains that she suffers from non-exertional limitations associated with peripheral neuropathy and mental retardation. The claimant avers that her symptoms include spots in her vision, sores on her feet, numbness in her hands, face and legs, and problems sitting for long periods of time.

Claimant, a 29 year-old black female, did not finish high school (attended until the

eleventh grade), and did not receive a GED. Claimant has only been employed on part-time jobs, lasting less than two months. Therefore, claimant does not have relevant past work experience.

The ALJ determined that claimant retains the residual functional capacity to perform light work.[1] The ALJ shifted the burden to the Commissioner to show that the claimant can perform jobs which exist in the national economy in significant numbers. The ALJ concluded that the Commissioner successfully met his burden.

## II. JURISDICTION

The claimant is a resident of Memphis, Shelby County, Tennessee which is in the Western District of Tennessee. The claimant timely pursued and exhausted all administrative remedies with the Commissioner before filing this appeal. Therefore, this Court has jurisdiction over the claimant's claim pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3)

## III. STANDARD OF REVIEW

 Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's findings are supported by substantial evidence, and whether the Commissioner employed the proper legal standards in reaching his conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.*

 When determining whether the Commissioner's findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole." *George v. Sullivan*, 909 F.2d 857, 859 (6th Cir.1990); citing *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980). We do not review the evidence de novo, make credibility determinations nor weigh the evidence. *Brainard*

*v. Secretary of Health and Human Services,* 889 F.2d 679, 681 (6th Cir.1989), citing *Reynolds v. Secretary of Health and Human Services,* 707 F.2d 927 (6th Cir.1983). The decision of the ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

## IV. RULE OF LAW

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); citing 20 C.F.R. § 404.1520. Step one determines whether the claimant is engaged in "substantial gainful activity"; if so, benefits are denied. *Id.* Step two, if the claimant is not, then the decision-maker determines whether the claimant has a medically severe impairment or combination of impairments; if found not severe, benefits are denied. *Id.* at 140, 141, 107 S.Ct. 2287. Step three, if the impairment is severe, the evaluation process determines whether the impairment is equivalent to one of the number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Id.* at 141, 107 S.Ct. 2287. Step four, if the impairment is not one that is conclusively presumed to be disabling, the Commissioner determines whether the impairment prevents the claimant from performing work she has performed in the past. *Id.* If the claimant cannot perform this work, the final step in the process is to determine whether she is able to perform other work in the national economy in view of her age, education, and work experience. *Id.* at 142, 107 S.Ct. 2287. The claimant is entitled to disability benefits only if she is not able to perform work. *Id.*

## V. LEGAL ANALYSIS

A. *The Claimant's Subjective Complaints of Impairments and Limitations*

The measure of an individual's pain cannot be easily reduced to a matter of neat calcula-

---

1. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 416.967(b).

tions. *Jones v. Secretary, Health and Human Services*, 945 F.2d 1365, 1369 (6th Cir. 1991). There are no x-rays that can be taken that would objectively show the precise level of agony that an individual is experiencing. *Id.* Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike, must often engage in guesswork. *Id.* Claims of disability due to pain have been decided on a case by case basis. *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 852 (6th Cir.1986).

Since the ALJ had the opportunity to observe the demeanor of the claimant, her conclusions with respect to credibility "should not be discarded lightly." *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 780 (6th Cir.1987); citing *Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir.1984) (quoting *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Courts have recognized that determinations of credibility related to subjective complaints of pain rest with the ALJ, and that "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 852 (6th Cir.1986); citing *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 538 (6th Cir.1981) (quoting *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)).

Courts recognize that "an individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." *Cohen v. Secretary of DHHS*, 964 F.2d 524, 529 (6th Cir.1992); citing 42 U.S.C. § 423(d)(5)(A).[2] *See also* 20 C.F.R. § 404.1529(a). Additionally, the Social Security Act provides that, in considering whether a person is disabled under Title II, "[o]b-

jective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques must be considered in reaching a conclusion as to whether the individual is under a disability." *Jones v. Secretary, Health and Human Services*, 945 F.2d 1365, 1369 (6th Cir.1991); citing 42 U.S.C. § 423(d)(5)(A).

■ Under this standard, the evaluation of subjective complaints regarding disabling pain is two-pronged. *Jones*, 945 F.2d at 1369; citing *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir.1986). We must determine whether there is objective medical evidence of an underlying medical condition. *Id.* If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition, or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *Id.* However, the Commissioner will not reject a claimant's statements about the intensity and persistence of her pain, or other symptoms or about the effect her symptoms have on her ability to work, solely because the available objective medical evidence does not substantiate her statements. 20 C.F.R. § 404.1529(c)(2). Medical history and objective medical evidence (such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption) are usually reliable indicators from which to draw reasonable conclusions about the intensity and persistence of pain, and the effect such pain may have on the individual's work capacity. *Jones*, 945 F.2d at 1369–1370.

■ A claimant may rely, in part, on her own testimony in combination with objective medical evidence in order to establish that she is disabled. *Cohen*, 964 F.2d at 529.

---

**2.** 42 U.S.C. § 423(d)(5)(A) further provides (in pertinent part) that an individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner may require. There must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be

expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

In determining whether a claimant is entitled to disability insurance payments, medical opinions and diagnoses of the treating physician are entitled to great weight, and if uncontradicted, are entitled to complete deference. *Cohen,* 964 F.2d at 528; citing *King v. Heckler,* 742 F.2d 968, 973 (6th Cir.1984). The treating physician has had greater opportunity to examine and observe the patient, and as a result, the medical opinion of the treating physician is given substantial deference. *Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir.1992). Generally, the Commissioner gives more weight to opinions from treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of a claimant's medical impairment(s), and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. 20 C.F.R. § 404 1527(d)(2). The longer a treating source has treated a claimant, and the more times a claimant has been seen by a treating source, the more weight the Commissioner will give the source's medical opinion. 20 C.F.R. § 404.1527(d)(2)(i). Furthermore, as a result of his duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Walker,* 980 F.2d at 1070. The treating physician's opinion is afforded more weight than the opinion of a physician employed by the government. *Duncan,* 801 F.2d at 855. However, the ultimate determination of disability rests with the Commissioner, not the treating physician. *Duncan,* 801 F.2d at 855; citing *Houston v. Secretary of Health & Human Services,* 736 F.2d 365, 367 (6th Cir.1984);

*see also Walker,* 980 F.2d at 1070 (citing *King,* 742 F.2d at 973). Accordingly, the Commissioner is not bound by a treating physician's conclusory statement. *Duncan,* 801 F.2d at 855; citing *King,* 742 F.2d at 973; *see also Cohen,* 964 F.2d at 528 (citing *Duncan,* 801 F.2d at 855).

The claimant, in the instant case, argues that the ALJ found her subjective complaints regarding the severity of her impairments, and the extent of her limitations not wholly credible. Claimant argues that the record overwhelmingly supports her subjective complaints and limitations.[3] Claimant asserts that she has been diagnosed with painful neuropathy resulting from her diabetes, and therefore, the determination of her credibility should be reconsidered by the ALJ.

The respondent avers that even though claimant maintains she has the above impairments, she is still able to care for her young son. (Tr. 38). Additionally, claimant tends to her own personal grooming, cooks meals, does the housecleaning, washes the laundry, and goes shopping. (Tr. 175). Respondent argues that the ALJ's residual functional capacity (RFC) determination is foremost supported by the notes from Dr. Acree, claimant's treating physician during December, 1994, through December, 1995.[4]

Respondent contends that the ALJ properly considered possible limitations caused by pain, and evaluated the subjective complaints of pain, in accordance with 20 C.F.R. § 416.929, when the claimant's RFC was assessed. (Respondent's brief p. 8). Respondent asserts that after claimant's alleged onset date of August 1, 1991, claimant's diabetes caused her to be hospitalized in October, 1995, but upon discharge her blood

---

**3.** Claimant testified that at times her feet hurt, in that it felt like pins and needles were sticking in her feet. (Tr. 33). Claimant testified that she has problems sitting or standing for long periods of time. (Tr. 33–34). Claimant testified that she experienced numbness in her hands, face and legs. (Tr. 33–34). Claimant testified that she would have problems understanding, and her alertness suffered because of her diabetes. (Tr. 35–36). Claimant testified that she did not know what was going on when her sugar level was low. (Tr. 36).

**4.** Dr. Acree noted, in December, 1994, that claimant's diabetes was under control. (Tr. 187). During claimant's January, 1995, examination, claimant reported she was feeling well, and did not have any problems. (Tr. 185). Dr. Acree noted claimant's non-compliance with checking her blood sugar and adhering to a special diet. (Tr. 183). Dr. Acree also stated that claimant's probable diabetic neuropathy was related to poor diabetes control. (Tr. 183). Claimant reported to Dr. Acree, in June, 1995, that she was feeling very well, and that the pain in her toe had subsided. (Tr. 183).

sugar level improved and she reported feeling good. (Tr. 196).

Respondent argues that claimant's medication indicates that she does not have total incapacitating pain. (Respondent's brief p. 9). Claimant only takes two aspirins a day. (Tr. 88). Respondent asserts that the evidence indicates that claimant's condition improves when she complies with checking her blood sugar level, maintaining her diet, and taking her insulin. (Respondent brief p. 9).[5]

The respondent additionally argues that claimant's daily activities indicate that she does not have disabling pain.[6] And, the ALJ properly considered the report from Dr. Curry Hearn, a psychological examiner for the respondent, concluded that the claimant's memory was adequate.[7]

Claimant cites Dr. McGee's RFC questionnaire to support her claim. (Claimant's brief p. 4). Dr. McGee stated that claimant's activities involving reaching, handling, feeling, pushing, and pulling are affected by her impairment. (Tr. 226). Dr. McGee stated that claimant had a problem using her hands and fingers due to brittle diabetes. (Tr. 226).

Claimant also cites Dr. Rhea, a consultant physician for the respondent, who diagnosed

the claimant as having diabetic neuropathy. (Tr. 192). Dr. Rhea supported his diagnosis with a neurological examination wherein he concluded that the claimant had decreased sensation of the bottom surface of both feet, and decreased vibratory sensation. (Tr. 190).[8]

 The ALJ concluded that claimant Feild does not suffer from total disabling pain. This Court finds that the ALJ's conclusion is supported by substantial evidence.

B. *The Regulatory Listing Governing Diabetes Mellitus*

 If a claimant is not doing substantial gainful activity, the Commissioner always looks first at the claimant's physical or mental impairment(s) to determine whether he or she is disabled or blind. 20 C.F.R. § 416.908. The Commissioner will decide that an claimant's impairment(s) is medically equivalent to a listed impairment in appendix 1 of subpart P of part 404 of this chapter if the medical findings are at least equal in severity and duration to the listed findings. 20 C.F.R. § 416.926(a). If a claimant arguably satisfies the criteria of a listed impairment in appendix 1, it is not proper to pre-

5. Claimant was hospitalized in March, 1990, but her condition improved with glucose and a proper diet. (Tr. 158). The following month, claimant's physician noted that she was apparently not complying with her diet. (Tr. 161). Claimant had a history of multiple admissions regarding her non-compliance. (Tr. 163). After being hospitalized in April, 1991, claimant's condition significantly improved after she was given insulin along with bicarbonate and IV fluids. (Tr. 164). In October, 1991, Dr. McGee noted that claimant's diabetes was under control at the present time, however, the unstableness of brittle diabetes makes her future condition uncertain. (Tr. 173). More recently, in December, 1994, Dr. Acree stated that claimant's diabetes mellitus was well controlled by insulin. (Tr. 187).

6. Claimant's housekeeping chores include sweeping, mopping, dusting, and using a vacuum cleaner. (Tr. 175). Claimant visits her parents and attends church. (Tr. 98). Claimant watches television, and works on crossword puzzles during her free time. (Tr. 99).

7. Claimant was able to recall the essential elements of her history, including listing significant names and dates. (Tr. 176). Claimant's concentration was sufficient to allow her to meet with her son's teacher for a two-hour session. (Tr.

176). The claimant reported to Dr. Hearn that she had difficulty relating to other people, but, when Dr. Hearn pressed her, she stated that it has been over a year since she had such problems. (Tr. 175). Dr. Hearn found claimant's communication skills to be somewhat limited, but still rational, coherent, and goal-directed. (Tr. 177). Dr. Hearn's opinion is that the claimant is able to complete assignments within the usual time frames for most employment siutations, and able to use reasoning as a problem-solving tool. (Tr. 178). Claimant could make simple work-related decisions, maintain schedules and attendance, sustain a work routine without being distracted by coworkers, and demonstrate appropriate social behavior with the public as well as with coworkers. (Tr. 179). Claimant could appropriately respond to instructions and criticism from supervisors, and she could adapt to changes in the work setting. (Tr. 179). Claimant would be aware of normal work hazards, and take appropriate precautions. (Tr. 179).

8. However, Dr. Rhea stated that the claimant's upper extremities were normal, while her lower extremities (hips, knees, and ankles) were nontender. Additionally, Dr. Rhea observed the claimant's range of motion to be normal. (Tr. 190).

clude a consideration of the listing by finding the impairment non-severe at the second stage of the inquiry. *Williamson v. Secretary of Health and Human Services,* 796 F.2d 146, 150 (6th Cir.1986).

If an applicant has an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but (1) does not exhibit one or more of the medical findings specified in the particular listing, or (2) does exhibit all of the medical findings, but one or more of the findings is not as severe as specified in the listing, the Commissioner will nevertheless find the applicant's impairment medically equivalent to the listing if he or she has other medical findings related to the impairment that are at least of equal medical significance. 20 C.F.R. § 416.926(a)(1)(i)-(ii). If an applicant has an impairment that is not described in the Listing of Impairments in appendix 1, or has a combination of impairments, no one of which meets or is medically equivalent to a listing, the Commissioner will compare the applicant's medical findings with those for closely analogous listed impairments. 20 C.F.R. § 416.926(a)(2).

The claimant, in the instant case, argues that her impairment is medically equivalent to the listed impairment governing diabetes at 20 C.F.R., Part 404, Subpart P, Appendix 1 (Listings) § 9.08(A) and (C).[9] The government response is that the claimant does not meet or equal paragraphs A or C, because she retains motor function in all her extremities, and has not had any limbs amputated.

The claimant asserts that she suffers from persistent disorganization of the skin on both hands and feet. (Claimant's brief p. 8). Claimant further maintains that use of her extremities has been shown, by numerous doctors, to be significantly limited.[10]

The government argues that the claimant does not meet or equal paragraph A, because she retained motor function in all her extremities.[11] And, claimant has not had any limbs amputated, so she fails to meet the requirements of paragraph C. (Respondent's brief p. 13).

■■■ The ALJ concluded that claimant Feild did not meet or equal any listed impairment in appendix 1. This Court finds that the ALJ's conclusion is supported by substantial evidence.

### C. *Use of the Vocational Guidelines without Vocational Expert Testimony*

■■■ The burden of proof in a claim for Social Security benefits is upon the claimant to show a disability which prevents her from performing any substantial gainful employment for the statutory period. *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 529 (6th Cir.1981); citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980). Once a prima facie case is made that the claimant cannot perform her usual work, the burden shifts to the Commissioner to show that there is work in the national economy which she can perform. *Id.*

■■■ Claimant has the ultimate burden of proving the existence of a disability. *Key v. Callahan,* 109 F.3d 270, 274 (6th Cir.1997); citing *Richardson v. Heckler,* 750 F.2d 506, 509 (6th Cir.1984). Only when the claimant has established that she can no longer per-

---

**9.** 20 C.F.R. Pt. 404, Subpt. P, 9.08 Diabetes mellitus. With:

A. Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C); or . . .

C. Amputation at, or above, the tarsal region due to diabetic necrosis or peripheral arterial disease; or . . .

**10.** Dr. McGee limited claimant's lifting to 5–10 pounds. (Tr. 225). Dr McGee limited claimant's use of her hands due to diabetes, and precluded their use in reaching, handling, pushing, pulling or feeling. (Tr. 226). Dr Rhea stated that she had frequent hypoglycemic reactions and diabetic neuropathy with foot problems. (Tr. 190).

**11.** Dr. McGee stated, in April, 1991, that claimant was able to move her extremities and her sensory exam was intact. (Tr. 164). He also found in October, 1991, that her neurologic examination was intact, and her extremities revealed no edema. (Tr. 173). Dr. Acree found claimant's extremities, in May, 1995, to be within normal limits. (Tr. 183). Dr. Rhea noted, in September, 1995, that claimant had decreased sensation on the bottom of her feet, but her motor strength was normal. (Tr. 190). Claimant's attending physician stated, in October, 1995, that her joints were not swollen. (Tr. 198). Dr. Hearn observed "no obvious limitations" with her ambulation or movements. (Tr. 176).

form her past relevant work does the burden shift to the Commissioner to establish that the claimant retains the residual functional capacity to perform other substantial gainful activity existing in the national economy. *Key,* 109 F.3d at 274; citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980). In evaluating residual functional capacity, the Commissioner may, but is not required to, use the services of a vocational expert. *Key,* 109 F.3d at 274; citing *Varley v. Secretary of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.1987).

■■■ The medical-vocational guidelines, commonly known as the "grid", are shortcuts which eliminate the need for calling vocational experts. *Hurt v. Secretary of Health and Human Services,* 816 F.2d 1141, 1142 (6th Cir.1987). When the claimant does indeed match one of the grid's patterns, then all the grid does is announce that substantial gainful work in the national economy is available for that particular individual; in other words, once a finding is made that the individual can do light work, for example, the grid operates to declare that light work is available. *Hurt,* 816 F.2d at 1142; citing *Kirk,* 667 F.2d at 535.

■■■ An evaluation of disability in general requires that the claimant's impairment(s) must prevent her from doing past relevant work. 20 C.F.R. § 404.1520(e). If the Commissioner cannot make a decision based on the applicant's current work activity or on medical facts alone, and the claimant has severe impairment(s), then the Commissioner will review the claimant's residual functional capacity, as well as the physical and mental demands of his or her past work. *Id.* If a claimant has previously worked, the Commissioner must decide whether he or she can return to the job previously held. *Wyatt v. Secretary of Health and Human Services,* 974 F.2d 680, 683 (6th Cir.1992). If the claimant's residual functional capacity is not enough to enable him or her to do previous work, the Commissioner must still decide if the claimant can do any other work. 20 C.F.R. § 404.1561. To do this, the Commissioner must consider the claimant's residual functional capacity, and his or her age, education, and work experience. *Id.*

A "younger person" is under age 50. 20 C.F.R. § 404.1563(b). "Marginal education" is general considered formal schooling at a 6th grade level or less. 20 C.F.R. § 404.1564(b)(2). "Limited education" is generally considered formal education between grades 7 and 11. 20 C.F.R. § 404.1564(b)(3). Work experience applies when it lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1565(a). "If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist." 20 C.F.R. § 404.1566(e). "We will decide whether to use a vocational expert or other specialist." *Id.*

■■■ The Sixth Circuit has clearly adopted the rule that when non-severe exertional impairments are present, the grid cannot be applied but vocational evidence must be obtained. *Isaac v. Sullivan,* 782 F.Supp. 1215, 1218 (S.D.Ohio 1992); citing *Damron v. Secretary of HHS,* 778 F.2d 279 (6th Cir. 1985). The grid is not fully applicable when the claimant suffers from a non-exertional impairment. *Damron,* 778 F.2d at 282. The regulation at 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e) provides that where an individual has both strength limitations and non-exertional limitations, the grid is a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the non-exertional limitations." Environmental restrictions are restrictions which result in the inability to tolerate some physical feature of the work settings that occurs in certain industries or types of work, e.g., an inability to tolerate dust or fume. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e).

An impairment or combination of impairments is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities are the abilities and aptitudes necessary to do most jobs. 20 C.F.R. § 404.1521(b).[12] The com-

---

12. Examples of these include: (1) physical func-

tions such as walking, standing, sitting, lifting,

bined effect of all a claimant's impairments shall be considered without regard to whether or not any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 404.1523.

 The claimant has the opportunity to present evidence, and to rebut and challenge each and every component that makes up the grid before disability is decided. *Kirk,* 667 F.2d at 528. Furthermore, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(a), specifically provides that only when the findings of fact, as to each of the relevant components of the grid, "coincide" with the grid's definitions do the guidelines direct a conclusion as to disability. If the characteristics of the claimant do not identically match the description in the grid, the grid is only used as a guide to the disability determination. *Kirk,* 667 F.2d at 528. Thus, if the non-exertional limitation restricts a claimant's performance of a full range of work at the appropriate residual functional capacity level, non-exertional limitations must be taken into account, and a non-guideline determination made. *Kirk,* 667 F.2d at 528–529.[13]

In *Kirk,* the claimant had "limited" education, and his functional capacity did not coincide with the criteria of Table No. 1. *Kirk,* 667 F.2d at 540. Therefore, the Sixth Circuit ruled that some vocational evidence in some form, including a description of the duties of specifically identifiable jobs, must be presented and matched to the individual claimant's age, education, experience, and functional restrictions. *Id.* at 541. The Sixth Circuit upheld the rule that expert vocational testimony will still be left to the discretion of the ALJ. *Id.* at 540.

 While a vocational expert is not required, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *Richardson v.*

*Secretary of Health and Human Services,* 735 F.2d 962, 964 (6th Cir.1984); quoting *O'Banner v. Secretary,* 587 F.2d 321 (6th Cir.1978). Where applicable, however, the Commissioner may rely on the medical-vocational guidelines found in Appendix 2 of 20 C.F.R. Part 404, Subpart P to satisfy his burden of proving that the claimant can perform specific jobs in the national economy. *Richardson,* 735 F.2d at 964; citing *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). The clear mandates of the grid dictate that when a claimant does not precisely fit the gird's mold, the grid is inapplicable, and the applicant is entitled to further individualized determination of the availability of work. *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, FN 8 p. 540 (6th Cir.1981).

In the instant case, claimant testified that she did not finish high school, but attended until the 11th grade. (Tr. 31). Dr. Hearn conducted the Wechsler Adult Intelligence Scale, and concluded that claimant's verbal IQ is 73, performance IQ is 71, and full scale IQ is 71. (Tr. 177–178). Dr. Hearn also administered the Wide Range Achievement Test, and determined that the claimant's reading and arithmetic abilities are at the 3rd grade level. (Tr. 178).

 The ALJ erroneously found that claimant Feild had a high school education. (Tr. 22). Consequently, the ALJ used this erroneous finding, in conjunction with the claimant's age, work experience, and exertional capacity for light work, to determine that the claimant's status is not disabled pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.20. (Tr. 22). The ALJ's error was more than a simple typing error since she relied on Rule 202.20, which is for an applicant with a high school education, instead of Rule 202.17, which is for an applicant without a high school education but

---

pushing, pulling reaching, carrying, or handling; (2) capabilities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

13. Nevertheless, the mere possibility of a non-exertional impairment is insufficient to preclude the application of the grid. *Kimbrough v. Secretary of Health and Human Services,* 801 F.2d 794, 796 (6th Cir.1986). Not even a minor non-exertional limitation is enough; the claimant must show an impairment that significantly limits her ability to do a full range of work at a designated level. *Id.*

under the same conditions. The respondent contends that the ALJ's inadvertent · misstatement is a harmless error, because if the ALJ had relied upon the correct education classification, the grid would still direct of finding of not disabled.

The ALJ's reliance may very well have been harmless error. However, the Court does not know if the ALJ was really aware of the claimant's formal 10th grade education, but reading and arithmetic abilities equivalent to the 3rd grade, when the ruling was rendered. The ALJ may have confused claimant Feild's circumstances with those of another. Therefore, claimant Feild's case is remanded to the ALJ to reconsider the disability claim under the correct education level, and, if needed, use a vocational expert to comply with Sixth Circuit precedent.

The claimant contends that the ALJ committed error when she: (1) found the claimant's non-exertional impairments diminimus, and (2) ignored the claimant's history of severe pain, effects of medication, and mental retardation. The claimant avers that the grid should not have been used to direct a finding of not disabled, because of the severe non-exertional impairments. And accordingly, a vocational expert was needed for the respondent to meet his burden of proof.

The respondent argues that his burden of proving that the claimant can perform other jobs which exist in the national economy in significant numbers was met. The respondent asserts that the ALJ correctly found that the claimant did not have any non-exertional limitations that would effect her ability to perform light work. (Tr. 22). And, the application of the grid is appropriate when non-exertional limitations are not severe enough to prevent a wide range of gainful employment at the designated level.[14]

In September, 1995, Dr. Hal Rhea, a consultative physician, found: (1) no swelling in the claimant's joints, (2) no skin rashes or swelling of claimant's lower extremities, feet, or ankles, (3) no symptoms in claimant's upper extremities, and (4) no blood clot in claimant's left big toe, because it was treated and resolved with aspirin. (Tr. 188).

 The ALJ concluded that claimant Feild's non-exertional limitations were not severe enough to prohibit the use of the grid. This Court finds that the ALJ's conclusion is supported by substantial evidence. Therefore, the case is remanded solely for the purpose of properly determining the claimant's claim based upon the correct educational level.

Based on the foregoing, the decision of the ALJ is reversed, and the case is remanded for further proceedings consistent with this order.

---

14. Dr. Acree, a treating physician, found that the claimant has the ability to perform more than light work. (Tr. 261). The ALJ discounted the assessment made by Dr. McGee, because it was not supported by clinical findings or consistent with the evidence. (Tr. 19). The ALJ found that the claimant's subjective complaints of pain were not credible, and that she does not meet or equal a listed impairment. (Tr. 22).